UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAND CAPITAL VI LLC, | |
| Plaintiff, | |
| v. | No. 16 C 2865 |
| MARSHALL N. DICKLER and LARRY P. KANER, | Magistrate Judge Mary M. Rowland |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case involves a claim for losses, damages, and costs, including attorneys' fees and post-petition interest, that Plaintiff claims it is due under indemnity and guaranty agreements that were given by Defendants as collateral support for debts owed by two LLCs that were ultimately owned by Defendants. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross-motions for summary judgment. For the reasons set forth below, summary judgment is granted in Sand Capital's favor.

### I. UNDISPUTED MATERIAL FACTS

In 2004, Dika-Homewood LLC and Dika-Matteson LLC (collectively, the Borrowers) entered into loans with Wachovia. (Pl's ¶¶ 7–8).[1] The Borrowers are owners of shopping centers located in Homewood and Matteson (the Properties), which are

---

[1] All factual citations are to Plaintiff's Statement of Material Facts (Dkt. 32; see Dkt. 39 (Def's Resp.) and Defendants' Statement of Material Facts (Dkt. 36; see Dkt. 41 (Pl's Resp.).

each managed by Dika-Management. (Def's ¶¶ 7, 8, 12, 13). Defendants are members of and managers of Dika-Management. (*Id.* ¶ 8). The loans were evidenced by notes and secured by mortgages encumbering the Properties. (Pl's ¶¶ 9, 12). The notes were further secured by Indemnity and Guarantee Agreements (the Agreements),[2] which were executed by Defendants. (*Id.* ¶¶ 10, 11, 13, 14). Thereafter, the loans, including the notes, mortgages and Agreements, were assigned from time to time, and in 2015, the loans were assigned to Plaintiff, which became the holder of the notes, mortgages, and Agreements. (*Id.* ¶¶ 15–18). Each of the Agreements provide that Defendants would be fully liable for the payment of: (a) any debt, obligation, or liability that the Borrowers were relieved of in the course of a bankruptcy case; (b) reasonable costs and expenses, including attorneys' fees, incurred by Plaintiff as a result of the Properties becoming assets in the Borrowers' voluntary bankruptcies; and (c) all costs and expenses, including attorneys' fees, incurred by Plaintiff in order to enforce the Agreements. (*Id.* ¶¶ 19–21).

In February 2015, each Borrower filed a voluntary Chapter 11 bankruptcy petition. (Pl's ¶¶ 22, 24). The Properties each became an asset in the respective Borrower's bankruptcy estate. (*Id.* ¶¶ 23, 25). In July 2016, the Bankruptcy Court entered orders confirming the Borrowers' plans. (*Id.* ¶ 32). In September 2016, Plaintiff received $2,711,979.81 from Dika-Matteson and $4,916,290.81 from Dika-Homewood. (*Id.* ¶¶ 34, 35). These amounts, when added to payments made during the bankruptcy by the Borrowers, equaled Plaintiff's proofs of claim filed in the applicable

---

[2] The Agreements are attached to the Amended Complaint. (Dkt. 19, Ex. B).

bankruptcy case but did not include either post-petition interest due on the notes or the attorney fees and expenses incurred by Plaintiff in either the bankruptcy court or this court. (*Id.* ¶¶ 36–37).

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment is proper only if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). To avoid summary judgment, the party who bears the burden of proof cannot rely on the pleadings alone, but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see Celotex*, 477 U.S. at 324 (Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.") (citation omitted).

The Seventh Circuit "has recognized that summary judgment is particularly appropriate in cases involving the interpretation of contractual documents." *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 602 (7th Cir. 1989). "Where the contract is unambiguous, a court must determine the meaning of the contract as a matter of law." *Murphy v. Keystone Steel & Wire Co., a Div. of Keystone Consol. Indus.*, 61 F.3d 560, 565 (7th Cir. 1995). A contract is unambiguous "if it is susceptible to only one reasonable interpretation." *Id.* The contract should be read as a whole so that all its parts will be given effect, *Preze v. Bd. of Trustees, Pipefitters Welfare Fund Local 597,* 5 F.3d 272, 274 (7th Cir. 1993), and related documents must be read together, *Lippo v. Mobil Oil Corp.,* 776 F.2d 706, 713 n. 13 (7th Cir. 1985).

**B. The Agreements Entitle Plaintiff to Unpaid Interest and Attorneys' Fees**

The parties agree that their dispute is governed by the Agreements. There is also no dispute that each Defendant executed his respective Agreement, that the Agreements were assigned to Plaintiff, and that Plaintiff fully performed its obligations under the Agreements. (Pl's ¶¶ 10, 11, 13, 14; Lau Aff. ¶¶ 20–23, 39; Def's ¶¶ 16, 21). The parties dispute, however, whether the Agreements entitle Plaintiff to post-petition interest and attorneys' fees.

Section One of the Agreements requires each Defendant, as personal indemnifiers, to pay certain costs if specified events take place. Regarding voluntary bankruptcies, the Agreements require Defendants to:

> pay, protect, defend and save [Plaintiff] harmless from and against . . . any and all liabilities, obligations, losses, damages, reasonable costs and expenses (*including, without limitation, reasonable attorneys' fees*), causes of action, suits, claims, demands and judgments of any na-

> ture . . . (collectively, "*Costs*") which may at any time be imposed upon, incurred by or awarded against [Plaintiff] as a result of . . . the Property or any part thereof becoming an asset in [ ] a voluntary bankruptcy or insolvency proceeding.

(Pl.'s ¶ 19) (quoting Agreements § 1(j)) (Section 1(j)) (emphasis added). Section One contains a Final Paragraph that provides:

> In the event, on account of the Bankruptcy Reform Act of 1978, as amended, . . . Borrower shall be relieved of or fail to incur any debt, obligation or liability as provided in the Loan Documents, [Defendants] shall nevertheless be fully liable therefor.

(*Id.* ¶ 20) (quoting Agreements § 1) (Final Paragraph). Finally, the Agreements are unequivocal that:

> In the event it is necessary for [Plaintiff] to retain the services of an attorney . . . in order to enforce this Agreement, . . . [Defendants] agree[ ] to pay to [Plaintiff] any and all costs and expenses, including, without limitation, reasonable attorneys' fees, incurred by [Plaintiff] as a result thereof and such costs, fees, and expenses shall be included in Costs.

(*Id.* ¶ 21) (quoting Agreements § 6(o)).

The only reasonable interpretation of Section 1(j) is that in the event of a voluntary bankruptcy in which Plaintiff's real estate collateral become assets of the bankruptcy estate, Defendants are required to pay Plaintiff's reasonable attorneys' fees and other Costs incurred in the bankruptcy court. Similarly, the Final Paragraph obligates Defendants to indemnify Plaintiff for any interest that the Borrowers were relieved of in the course of the bankruptcy proceeding. Finally, the Agreements require Defendants to reimburse Plaintiff for all attorneys' fees and other Costs incurred in this Court enforcing the Agreements.

### *1. Defendants are liable for post-petition interest.*

Defendants contend that they have no liability under the Agreements for unpaid interest. (Dkt. 38 at 2–10). They argue that Section 1(j) applies only to "Costs," which do not include post-petition interest. That is correct, and Plaintiff acknowledges that "Costs" only "relate to items that are not debts, obligations, or liabilities under the Loan Documents." (Dkt. 43 at 7). But the Final Paragraph clearly applies to *any liability or obligation* relieved by a bankruptcy petition. As noted above, there is no genuine dispute that $1,130,329.50 in unpaid post-petition interest—certainly a liability or obligation—was relieved by the bankruptcy cases.

Defendants contend, however, that the Final Paragraph "is a part of Section 1, and that paragraph can *only* be construed as applying to the itemized Subsections 1(a) through (j) which *immediately* precede that paragraph." (Dkt. 38 at 4–5) (emphasis in original). The Final Paragraph is the conclusion of Section 1, titled "Indemnity and Guarantee." But there is no indication that the indemnities in the Final Paragraph apply only if one of the events described in Subsections (a)–(j) has occurred. Instead, the Final Paragraph includes *additional* indemnities that are not included in the Costs triggered by the events described in Subsections (a)–(j).

Defendants argue that *Grevas v. U.S. Fid. & Guar. Co.*, 152 Ill. 2d 407, 411 (1992), requires the Court to apply the specific clause over the general clause when construing a contract. (Dkt. 38 at 5). But the *Grevas* court merely noted that, "where both a general and a specific provision in a contract address the same subject, the more specific clause controls." 152 Ill. 2d at 411. Unlike the contract terms

in *Grevas,* the Costs described in Subsections (a)–(j) specify amounts that must be paid to the Plaintiff if specific events take place regarding the collateral: destruction, condemnation, failure of tenants to pay rents, fraud, damage from hazardous waste or placing the property in bankruptcy. To the contrary, the Final Paragraph requires indemnification of any "obligation or liability as provided in the Loan Documents" that a Borrower is relieved of through the Bankruptcy Reform Act.

Defendants also argue that because the Agreements were designed to provide only limited indemnification, the Final Paragraph must be construed within the limits set by Subsections (a)–(j). (Dkt. 38 at 3–5). But the Final Paragraph *is* limited in scope—it is activated only upon the Borrowers successfully avoiding, through bankruptcy procedures, any obligations under the loan documents.

### 2. *Defendants are liable for reasonable attorneys' fees.*

Defendants assert that Section 1(j) "only refers to loss incurred *as a result of the Property* becoming an asset in the bankruptcy proceeding." (Dkt. 38 at 8) (emphasis in original). Defendants argue Section 1(j) "can only be construed as a situation where the Property itself, the collateral, is in jeopardy or becomes subject to claims, and the Lender incurs some loss or expense to address the Property as a result." (*Id.*). But the bankruptcy litigation arose because the Properties became assets in bankruptcy. The automatic stay imposed by the Bankruptcy Code applied both to Plaintiff's "claim" and the Properties. 11 U.S.C. § 362(a). And the Code specifically prohibited Plaintiff from taking steps to "obtain possession of the property of the estate" or to "enforce any lien against property of the estate." *Id.* § 362(a)(3)–(4). Thus,

when the Properties became assets in the bankruptcy cases, any attempt by Plaintiff to collect on its claims—including interest payments on the loans—or foreclose on its collateral were stayed. Further, Defendants acknowledge that the loans were nonrecourse (Dkt. 35 at 10) (citing Dkt. 19, Ex. A (Note) at § 2.6(a)–(b)), which limited Plaintiff to look *only* to the Borrowers' collateral—the Properties—for repayment, *see Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 438 n.3 (1999) ("A nonrecourse loan requires the Bank to look only to the Debtor's collateral for payment."); *accord In re B.R. Brookfield Commons No. 1 LLC*, 735 F.3d 596, 597 n.1 (7th Cir. 2013). Because the loans were nonrecourse, Defendants could have avoided the instant litigation by simply giving Plaintiff the deeds to the Properties. Under the plain terms of the Agreements, Plaintiff is entitled to Costs, which explicitly include attorneys' fees, incurred as a result of the Properties becoming assets in the bankruptcy cases.

**C. Sand Capital Has Not Been Paid in Full**

Defendants contend that Plaintiff "cannot possibly have any claim because the loan indebtedness on the loan and the Note have been paid and satisfied in full, and the debt on the loan and the Note have been released." (Dkt. 35 at 13). But it is undisputed that the proof of claim amounts did not include post-petition interest or attorneys' fees. (Pl's ¶ 29; Def's ¶¶ 41, 45). Still Defendants argue that payment of the proof-of-claim amounts is equivalent to being "paid in full." (Dkt. 35 at 13).

The Indemnity and Guarantee Agreements executed here are broader than payment of the amount due under the loan. These types of agreements are often

known as "bad boy guarantees" and are "frequently required by lenders providing financing to special purpose entities, often in real estate transactions, to permit the lender to pursue the individual controlling the special purpose borrower for actions that undermine the value of the lender's collateral." *CP III Rincon Towers, Inc. v. Cohen*, 666 F. App'x 46, 49 n.1 (2d Cir. 2016). "Thus, unlike a payment guarantee, which is triggered when a borrower fails to pay an amount when due, a bad boy guarantee is triggered when one of the enumerated bad acts occurs." *Nexbank, SSB v. Soffer*, No. 652072/13, 2014 N.Y. Misc. LEXIS 2462, at *6 (N.Y. Sup. Ct. May 30, 2014), *aff'd*, 11 N.Y.S.3d 135 (N.Y. App. Div. 2015). Indeed, "the purpose of a 'bad boy' guarantee would be frustrated if payment of the Loan was a defense." *Id.* at *13.[3]

Here, as in *Nexbank*, Defendants seek to defeat the purpose of the Agreements by asserting that "loan indebtedness on the loan and the Note have been paid and satisfied in full." (Dkt. 35 at 13). But the Borrowers merely paid the proof-of-claim amounts, which did not include any post-petition interest amounts. And as in *Nexbank*, the obligations indemnified are different than those included in the proofs of claim. The Agreements obligate Defendants to pay (a) the Costs, including attorneys' fees, incurred by Plaintiff pursuant to Sections 1(j) and 6(o), and (b) the debts, obligations, and liabilities (including post-petition interest) that the Borrowers are relieved of in bankruptcy.

---

[3] Defendants rely on *Marble Emporium, Inc. v. Vuksanovic*, 339 Ill. App. 3d 84 (2003), and *First State Bank of Round Lake v. Busse*, 126 Ill. App. 3d 577 (1984), which involve traditional guarantees. They are thus inapplicable to the "bad boy" guarantees at issue here.

Defendants also contend that by releasing the mortgages, Plaintiff acknowledged payment in full. (Dkt. 35 at 13). But each release explicitly provided that Sand Capital was not releasing any rights and claims against the individual Defendants, including those asserted or that could be asserted in this case. (Dkt. 36-2, Ex. 21). Further, a release of a mortgage merely releases the lien on the collateral, not any amounts owed on the loan documents, such as attorneys' fees. *Petkus v. St. Charles Sav. & Loan Ass'n*, 182 Ill. App. 3d 327, 330 (1989) ("The release of a mortgage extinguishes the lien of the mortgage and bars an action for foreclosure. Therefore, when the [mortgagee] executed the mortgage release, what it released was its interest in or lien on the secured property. The release of the lien did not necessarily mean that the parties' other rights under the agreement were extinguished also.") (citation omitted).

Finally Defendants assert that because Plaintiff has made a profit on its loan purchases, Plaintiff has incurred no damages. (Dkt. 35 at 15). But whether Plaintiff made a profit when it purchased the loans is not relevant to Defendants' obligations under the Agreements. Defendants' obligations were not eliminated when Plaintiff purchased the loans. Instead, Plaintiff stepped into the shoes of its predecessors-in-interest and succeeded to all rights under the loan documents, including those in the Agreements. *See Twenty First Century Recovery, Ltd. v. Mase*, 279 Ill. App. 3d 660, 668 (1996) ("Upon assignment of the note to plaintiff . . . , plaintiff stepped into the shoes of its assignor . . . .").

Summary judgment is granted in Sand Capital's favor. Defendants are liable for the post-petition interest that was released in the bankruptcy cases; the attorneys' fees and other Costs incurred by Sand Capital during the voluntary bankruptcy proceedings; and the attorneys' fees and other Costs incurred enforcing the Agreements in this Court.

### III. DAMAGES

It is uncontested that the post-petition interest released in the bankruptcy cases amounts to $1,130,279.50. The Court hereby awards this amount to Plaintiff.

Defendants contend that even if Plaintiff is entitled to attorneys' fees, the amount sought, $505,358.34, is unreasonable and unnecessary. (Dkt. 38 at 12–15). Plaintiff bears the burden to demonstrate "the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The affidavit of Andrew Lau, a Sand Capital Director, indicates that Sand Capital has paid or is in the process of paying *all* of the fees and expenses owed to its attorneys (Lau Aff. ¶¶ 36–37), making the fees *prima facie* reasonable. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 653–54 (7th Cir. 2011) (recognizing that "the best evidence of whether attorney's fees are reasonable is whether a party has paid them") (citation omitted); *Arthur v. Catour*, 216 Ill. 2d 72, 82 (2005) ("The *prima facie* reasonableness of a paid bill can be traced to the enduring principle that the free and voluntary payment of a charge for a service by a consumer is presumptive evidence of the reasonable or fair market value of that service."); *Budnick Converting,*

*Inc. v. Nebula Glass Int'l, Inc.*, No. 09 CV 646, 2012 WL 2017972, at *5 (S.D. Ill. June 5, 2012) ("the affidavit of Budnick's vice president of sales indicates that Budnick has paid all of the fees owed to their attorneys, making it *prima facie* reasonable") (citation omitted). Defendants have not rebutted the *prima facie* reasonableness of Plaintiff's fees.

Defendants contend that Plaintiff has not met its burden of establishing that the time spent in the bankruptcy cases was necessary. (Dkt. 38 at 13). Defendants argue that Plaintiff's motion for summary judgment in the bankruptcy cases unnecessarily extended the litigation and in the end, "Plaintiff was not successful, as its motion to dismiss and motion for summary judgment were not granted, and its opposition to confirmation of the Amended Plans was unsuccessful." (*Id.*).

The transcripts from the bankruptcy cases reveal a different story. The bankruptcy court found that the *Borrowers* engaged in "frivolous" arguments and "delaying" tactics. (May 24, 2016 Tr. at 15–16, 19, 23–24). While Defendants are correct that the bankruptcy judge would have preferred to proceed with a "confirmation hearing and evidence at the hearing" (Dkt. 38 at 13), the preferred practice was *impossible* at the time of the hearing because the *Borrowers* had not yet filed their reorganization plan (Dkt. 35, Exs. F, G). Even after waiting almost 12 months to file their proposed plans, the bankruptcy judge found them "facially unconfirmable." (May 24, 2016 Tr. at 8). At the final confirmation hearing, the bankruptcy judge noted on the record that the *Borrowers*' tactics had resulted in "a lot of unnecessary attorneys' fees incurred" by Plaintiff. (July 21, 2016 Tr. at 163). Under these cir-

cumstances, the Court finds that the fees incurred by Plaintiff in the bankruptcy cases were reasonable and necessary. *See Spegon*, 175 F.3d at 550 ("District courts have wide discretion in determining the appropriate amount of attorneys' fees and costs . . . .").

Defendants also contend the fees incurred in the instant case were unreasonable and excessive. (Dkt. 38 at 14–15). But it was *Defendants* who refused to accept service of process and forced the Court to employ the Marshals Service to serve Defendants after they managed to evade service for almost two months. (Dkt. 7, 9). Even after the Marshals Service was appointed, it still took an additional two months before Defendants could be served. (Dkt. 11, 12, 14). Thereafter, Plaintiff promptly amended its complaint and completed discovery within the initial deadlines set by the Court. (Dkt. 19, 26, 30). Thus, the Court finds the time spent by counsel in the instant case was necessary and reasonable.

Defendants also complain about the billing rates for Thomas Wolford ($625) and John Scharkey ($535). (Dkt. 38 at 12). But these rates are well within the national average for partner billing rates. *See Billing Rates Across the Country*, Nat'l Law Journal, Jan. 13, 2014, *available at* www.nationallawjournal.com (last visited June 8, 2017) (finding an average partner rate of $604).

Finally, Defendants complain generally about the bankruptcy and instant case not being billed separately and about different tasks being lumped together, "making it difficult to determine the time and reasonableness of the time expended on each task." (Dkt. 38 at 12–13). However, by failing to cite to any specific billing rec-

ords, Defendants have waived their objections. *See Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 664 (7th Cir. 1985) (Counsel opposing a fee request must "state objections with particularity and clarity"); *Ratliff v. City of Chicago*, No. 10 CV 739, 2013 WL 3418070, at *6 (N.D. Ill. July 8, 2013) (where "Defendants' objections did not identify the specific items that are in dispute or provide insight as to why a particular item is or is not excessive," the court concluded that "Defendants have waived their specific objections to Plaintiff's fee entries"). In any event, "the amount of itemization and detail required is a question for the market." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). If Sand Capital found the billing details sufficient, this Court will not require any more. *See id.* ("If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more.").

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [31] is **GRANTED**, and Defendants' Motion for Summary Judgment [35] is **DENIED**. Judgment shall be entered in Sand Capital VI LLC's favor and against Marshall Dickler and Larry Kanar. Sand Capital is awarded $1,130,279.50 in post-petition interest and $505,358.34 in fees and expenses.

E N T E R:

Dated: July 14, 2017

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States Magistrate Judge